WARREN STOVER, petitioner,

*v.*

ADELLA STOVER, defendant.

[Submitted April 12th, 1923.   Determined April 13th, 1923.]

1. An actual desertion under the Divorce act must be "willful"—that is, intended by the deserter; "obstinate"—that is, persisted in against the will of the deserted, and "continuous"—that is, without interruption for the statutory period.

2. Charges by a wife that her husband was guilty of adultery, made by her in good faith, do not amount to cruelty on her part, where the husband's health was not seriously impaired thereby.

3. Where a wife made charges of adultery against her husband, believing them to be true, and after her petition for divorce on that ground was denied, offered to return to her husband, still believing the charges were true, but expressing a willingness to forgive him, the husband was not justified in demanding that she publicly retract her charges before he would permit her to return, and his refusal to permit her to return interrupted the statutory period of desertion and defeated his right to divorce on that ground.

On petition for divorce.

*Mr. Howard L. Miller,* for the defendant.

*Mr. W. Holt Apgar,* for the petitioner.

INGERSOLL, V. C.

The petitioner charges that he and the defendant were married on the 29th day of March, 1916, and that they "cohabited after their said marriage until about the month of October, 1919, when the said defendant deserted him; but that thereafter, to wit, in April 1920, there was a reconciliation and the parties lived together again from on or about the first of May, A. D. 1920, until the 9th day of June, A. D. 1920, when, on said last mentioned day, the said

defendant again deserted him; and for more than two years last past said defendant has willfully, continuedly and obstinately deserted your petitioner."

The defendant answering says, that "in October, 1919, she was compelled to leave her (said) home, as she was unable longer to endure the strain and mental agony inflicted by petitioner's treatment; that she later returned to the home of the petitioner; that the petitioner ceased his cruel treatment of her, but by reason of financial restraint she was exposed to indignity and humiliation, and was again compelled to leave the home of petitioner; that she is ready at any time to return to her husband upon his assurance that he will treat her with due consideration, and extend to her half what she is entitled to receive."

The petitioner in reply to the answer says that said statements are untrue, and are *res adjudicata*, by reason of the filing on September 29th, 1920, by the defendant of a bill for support and maintenance, which proceeded to a final hearing on January 3d, 1921, when an order of dismissal was advised by Vice-Chancellor Backes.

The file and the testimony taken in that proceeding has been offered in evidence in this present action.

In the bill for maintenance the wife charged adultery and extreme cruelty. Neither of these charges being sustained by the evidence it was held that Mrs. Stover was not justified in her separation from her husband.

Since the dismissal of the bill for maintenance Mrs. Stover has entered upon a course of apparently determined effort to terminate this desertion by her. At first she insisted upon exacting certain conditions upon the part of Dr. Stover before she would return; but finally abandoning all conditions on or about December 22d, 1921, she returned to his residence, it also being his place of business, and announced her desire and intention of remaining.

She remained all day, apparently without any friction, and also over night. The doctor, however, late in the afternoon, leaving, remaining elsewhere all night, and returning

the next morning. After his return he ordered her to leave, which order, after some delay, she obeyed.

The petitioner explains as his refusal to permit her to remain that her offer was not *bona fide,* and that she had been guilty of such extreme cruelty as to justify him in refusing to live with her. This extreme cruelty alleged by him is that she had falsely charged him with the crime of adultery, had pressed that charge in this court, and even after the determination of the court that the doctor was not guilty had insisted upon her belief in his guilt.

That by reason of said charges she had damaged him in the esteem of the community and has injured him in his profession (that of a dentist), all of which has seriously affected his health, and that she was by reason of said conduct guilty of extreme cruelty.

An actual desertion under our statute must be:

1. Willful—that is, intended by the deserter.

2. Obstinate—that is, persisted in against the will of the deserted.

3. Continued—that is, without interruption for the statutory period.

*Danielly* v. *Danielly, 93 N. J. Eq. 556.*

The desertion was willful on her part.

Two questions are therefore presented. 1st. Were the offers of Mrs. Stover to return *bona fide?* While there must be a doubt that a reconciliation between the parties in the frame of mind which existed in each could be permanent, can she be held responsible for the entire situation?

Vice-Chancellor Backes had determined she was not justified in her separation and she therefore accepted the ruling of the court, and determined to end the obstinacy of her desertion.

This she has done in so far as in her power so to do.

Was the petitioner justified in his demand of her, *i. e.,* to retract her charges of adultery against him. This she claims to be unable to do. Although the court found the evidence insufficient to substantiate the charge, she in court insists that she still believes him guilty, but further states she fully for-

gives the offence and is entirely willing to condone it. Can she be required to do more? She believed the guilt to exist notwithstanding the determination of the court; but if guilty, as she believes him to be, she forgives.

2d. Has she been guilty of extreme cruelty and is this desertion on her part?

Is a charge of adultery, pressed in this court, publicly and with great notoriety, insisted upon after a determination by this court that it did not exist, the alleged paramour being employed by and with her child kept at the home of Mrs. Stover and in a general course of events advertising to the world, her belief that her husband was the father of that child, that extreme cruelty required by our statutes to constitute constructive desertion?

Had the physicians who were called sustained the accusation that Dr. Stover's health had been seriously impaired by reason of the charges, or from the notoriety arising by reason thereof, this might have been extreme cruelty. *19 Corp. Jur. 51.*

This, however, they failed to do. If these charges were made in good faith they did not constitute cruelty. *19 Corp. Jur. 52.*

The petitioner was not justified in his first demand made of her, that she should retract the charge and should secure an affidavit of the mother that he was not the father of the illegitimate child. Was he justified in refusing her permission to return unless she complied with his later expressed requirement to publicly retract her charge of adultery?

I cannot find, in view of the testimony of the physicians, her guilty of extreme cruelty by reason of the charges made by her. Her *bona fide* willingness and desire to return to him and resume their marriage relations is all he could under the circumstances demand, and his refusal to permit her return without her first publicly retracting her charge is not justified.

Vice-Chancellor Grey in *Loux* v. *Loux, 57 N. J. Eq. 561* (at *p. 567*) said: "There is a line of cases expounding the

duty of a husband when the separation is the act of the wife and not justifiable." See *Cornish* v. *Cornish, 23 N. J. Eq. 209; Bowlby* v. *Bowlby, 25 N. J. Eq. 406; affirmed on appeal, 25 N. J. Eq. 570; Taylor* v. *Taylor, 28 N. J. Eq. 207; Driver* v. *Driver, 28 N. J. Eq. 393.*

"These decisions, especially that of *Bowlby* v. *Bowlby*— which was affirmed by the court of errors upon the grounds stated by the vice-chancellor—declared it to be the husband's duty in such cases to make such advances as a just man should in order to put an end to his wife's desertion."

The same was also declared in *Norcross* v. *Norcross, 82 N. J. Eq. 195,* and it was said: "And he is excused from discharging this obligation only when it is manifest from the facts in the case that to do so would be unavailing." *Hall* v. *Hall, 65 N. J. Eq. 709.*

Even if, under the circumstances of this case, it should be decided (although I do not so decide) that it was not the duty of the petitioner to make advances, the facts remain that the defendant (the wife) made sufficient advances and requests to be permitted to return to her husband and that he repulsed her and refused to permit her to remain, in fact ordered her from his home.

The result is that although the desertion of the petitioner by the defendant was willful, it has not been obstinate within the meaning of the statute for the statutory period. *Hall* v. *Hall, 60 N. J. Eq. 469; Hyer* v. *Hyer, 91 N. J. Eq. 147.*

The petition will be dismissed.